IN THE CIRCUIT COURT OF COAHOMA COUNTY, MISSISSIPPI

MILTON D. "PETE" DUNN,　　　　　　　　　　　　　　　　　　PLAINTIFF

vs.　　　　　　　　　　　　　　　　　CAUSE NO. _____

AGRISOMPO NORTH AMERICA, INC.　　　　　　　　　　　　DEFENDANT

## MOTION FOR PRELIMINARY INJUNCTION

The Plaintiff, Milton D. "Pete" Dunn, by and through counsel and pursuant to Miss. R. Civ. P. 65, hereby moves this Court for a preliminary injunction enjoining Defendant from communicating with any other individual or entity that Plaintiff is subject to any restrictive covenant not to compete with Defendant or is otherwise restricted from competing in the crop insurance industry. For cause, Plaintiff relies upon and incorporates herein by reference his Verified Complaint and further states as follows:

I.　FACTS

Plaintiff Milton D. "Pete" Dunn is an adult resident and citizen of Coahoma County, Mississippi. Plaintiff has worked in the crop insurance industry for over 40 years as a licensed crop insurance agent. Plaintiff and three other individuals were shareholders of Dunn, Marley & Harris Agency, Inc., a crop insurance agency. In 2011, CGB Diversified Services, Inc. ("Diversified") acquired the stock and other assets of Dunn, Marley & Harris Agency, Inc. from Plaintiff and the agency's other shareholders.

Plaintiff entered into a Contract of Sale with Diversified, which is attached to the Verified Complaint as **Exhibit A**, as part of the sale transaction. Section 40 of the Contract of Sale provides, in pertinent part:

> 40. **Covenant Not to Compete.** As a condition of Purchaser's obligations under this agreement, and to the extent that the Purchaser has not committed a material and continuing breach of this agreement, each Seller or key employee shall agree that, while each Seller or key employee is employed by Purchaser and for a period of two years commencing on the last date of employment with Purchaser, <u>and assuming the Purchaser</u> complies with all provisions of this Agreement and <u>does not sell its crop insurance division to another party</u>, said Seller or key employee will not, directly or indirectly, within the existing marketing area of the Corporation, enter into or engage generally in direct competition with the Corporation in the business of insurance....

(emphasis added). Plaintiff was a "Seller" under the Contract of Sale. Diversified was the "Purchaser" under the Contract of Sale.

As part of Plaintiff's sale transaction to Diversified, Plaintiff entered into an Employment and Non-Compete Agreement, which is attached to the Verified Complaint as **Exhibit B**. Section 8 of the Employment and Non-Compete Agreement is general and purports to restrict Plaintiff from competing with Diversified for a period of two years following his last date of employment with Diversified. Unlike Section 40 the Contract of Sale, Section 8 of the Employment and Non-Compete Agreement does not contain the specific qualifier voiding the restrictive covenant in the event that Diversified "sold its crop insurance division to another party." Under Mississippi law, specific provisions in a contract control over more general inconsistent language.

2

In 2020, Diversified sold its crop insurance division to Defendant AgriSompo North America, Inc. After Diversified's sale to Defendant, Plaintiff became an employee of Defendant. Diversified's sale of its crop insurance division to Defendant thereby rendered the restrictive covenant of Section 40 of the Contract of Sale unenforceable or inapplicable according to its own terms.

The Contract of Sale was Sale was not assignable absent prior written consent of the other party except for an assignment incident to a merger, consolidation, or reorganization of either Plaintiff or Diversified. Diversified's sale of its crop insurance division to Defendant was not a merger, consolidation, or reorganization. The Employment and Non-Compete Agreement was not assignable. At no time did Plaintiff enter into any agreement with Defendant that would restrict him from competing with Defendant after his termination from employment with Defendant.

On August 26, 2021, Defendant terminated Plaintiff's employment. Shortly after Plaintiff's termination, Defendant sent one or more "cease and desist" letters to various companies in the crop insurance industry advising that Plaintiff was subject to certain restrictive covenants that prohibited him from competing with Defendant. Upon information and belief, Defendant has communicated with other business and individuals in the crop insurance industry in Mississippi and elsewhere and advised that Plaintiff is subject to a restrictive covenant that would prohibit him from competing with Defendant.

## II. LAW AND ARGUMENT

To prevail on a motion for preliminary injunctive relief, a plaintiff must establish, by a preponderance of the evidence, the following factors:

> (1) whether a substantial likelihood exists that the plaintiff will prevail on the merits; (2) whether the injunction is necessary to prevent irreparable injury; (3) whether threatened injury to the plaintiff outweighs the harm an injunction might cause to the defendant; and (4) whether the entry of a preliminary injunction is consistent with the public interest.

*Lauderdale v. DeSoto Cty. ex rel. Bd. of Supervisors*, 196 So. 3d 1091, 1101 (Miss. Ct. App. 2016).

On the first factor, Plaintiff is likely to succeed on the merits of this cause of action because the pertinent contractual language provides, on its own terms, that the non-competition provision would no longer apply if Diversified sold its crop insurance division, which they did in 2020. Mississippi courts apply the "four corners" test when interpreting a contract, objectively reading the language that the parties used, to the exclusion of parol or extrinsic evidence. *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 111 (Miss. 2005) Here, the Contract of Sale plainly states that the non-compete provision would not apply if Diversified sold its crop insurance division. Because Diversified sold to Defendant, the non-compete restrictive covenant is inapplicable.

Defendant is likely to rely upon the more general terms of the Employment and Non-Compete Agreement ("ENCA") that Plaintiff signed with Diversified. This reliance is misplaced for several reasons. First, the ENCA was not assignable.

Second, the ENCA prohibited Plaintiff from competing with Diversified, not Defendant. Third, when construing a contract, Mississippi courts read the contract as a *whole*, so as to give effect to all of its clauses. *Facilities, Inc.*, 908 So. 2d at 111 (Miss. 2005) (emphasis in original) (quoting *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss. 1992)). Both the ENCA and the Contract of Sale were entered into between Plaintiff and Diversified on the same day – May 26, 2011. The only way to read these contractual provisions in harmony and give effect to all of their clauses is to conclude that the more specific provision in the Contract of Sale governs over the more general terms of the ENCA. *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.*, 753 So. 2d 1077, 1085 (Miss. 2000) (holding that under the doctrine of *ejusdem generis* specific language controls over general inconsistent language in a contract).

Next, absent injunctive relief, Plaintiff will suffer irreparable harm in the form of damage to reputation and business opportunities resulting from Defendant's anti-competitive and wrongful actions in "blackballing" Plaintiff in the crop insurance industry by wrongfully communicating that Plaintiff is subject to a non-compete restrictive covenant. This harm to Plaintiff's reputation and business cannot merely be compensated by the payment of money damages due to the inherently unquantifiable damage and loss associated with reputational harm. Further, the crop insurance industry is necessarily based on long-term business relationships that are built over time. Defendant's wrongful actions not only harm Plaintiff irreparably in

5

the short-term, but also have substantial long-term consequences in the development of Plaintiff's business relationships.

On the other hand, Defendant will suffer no harm by the entry of a preliminary injunction given that the injunction concerns enforcement of a contract to which Defendant was not a party. Defendant may not "blackball" Plaintiff in the marketplace without consequence based on its incorrect reading of a contract.

Lastly, the public interest would be served by entering a preliminary injunction given that the public inherently benefits from the enforcement of contracts on their terms. Moreover, the public benefits from increased competition in the marketplace. The Supreme Court of Mississippi has long held that restrictive covenants like a covenant not to compete are in restraint of trade and individual freedom and are not favorites of the law. *Cain v. Cain*, 967 So. 2d 654, 661 (Miss. Ct. App. 2007) (citing *Frierson v. Sheppard Bldg. Supply Co.*, 154 So. 2d 151, 156 (Miss. 1963)).

**WHEREFORE**, the Plaintiff respectfully requests that the Court enjoin Defendant from communicating with any other individual or entity that Plaintiff is subject to any restrictive covenant not to compete with Defendant or is otherwise restricted from competing in the crop insurance industry. Plaintiff further requests that the Court grant any such other and further relief to with Plaintiff may be entitled.

Respectfully submitted this 20th day of September, 2021.

_____
Christopher M. Myatt (MSB 103812)
Martin, Tate, Morrow & Marston, P.C.
International Place, Tower II
6410 Poplar Ave, Suite 1000
Memphis, TN 38119
901-522-9000
901-527-3746 fax
cmyatt@martintate.com

FILED
2021 SEP 22  AM 10: 44
CIRCUIT CLERK
COAHOMA COUNTY MS