**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MILTON D. PETE DUNN, ET AL.**                                                     **PLAINTIFFS**

**v.**                                             **CIVIL ACTION NO.: 4:21-cv-136-JMV**

**AGRISOMPO NORTH AMERICA, INC.**                               **DEFENDANT**

## ORDER

This matter is before the court to resolve Defendant's objections to 2 topics appearing in a 30(b)(6) notice of deposition of the defendant corporation and a portion of a 3rd 30(b)(6) topic.[1] For the reasons discussed below, I find the objections to the disputed 30(b)(6) topics, as they are currently drafted, well taken. However, if modified, as discussed hereafter, I would find the disputed topics proper.

By way of background, it appears that Plaintiffs, or some of them, were the owners of all the issued and outstanding shares of stock in Dunn Marley & Harris Agency, Inc. (DMH, Inc.), a corporation engaged in the business of selling crop insurance in or around Mississippi. On 5/26/2011 those shareholders entered a contract to sell their shares in DMH, Inc. to DGB Diversified Services Inc., a company who apparently, at least sometimes, utilized a d/b/a of Diversified Crop Insurance Services, but in any event, whose stock was at that time owned by

---

[1] The parties have previously indicated that they may also have an issue regarding the depositions of two executives of the defendant corporation. Should such issue persist after the conclusion of the 30(b)(6) deposition of the defendant set for 4/19/23, Plaintiffs will file, within 2 business days, a supplemental memo further addressing that issue, Defendant will then have 2 business days to respond, and Plaintiffs will have 1 business day to reply.

CGB Enterprise Inc. The contract of sale of the shares of DMH, Inc. ("the share sale contract") provided in relevant part:

> **40. Covenant Not to Compete.** As a condition of Purchaser's obligations under this agreement, and to the extent that the Purchaser has not committed a material and continuing breach of this agreement, each Seller or key employee shall agree that, while each Seller or key employee is employed by Purchaser and for a period of two years commencing on the last date of employment with Purchaser, <u>and assuming the Purchaser</u> complies with all provisions of this Agreement and <u>does not sell its crop insurance division to another party</u>, said Seller or key employee will not, directly or indirectly, within the existing marketing area of the Corporation, enter into or engage generally in direct competition with the Corporation in the business of insurance….(emphasis added).

The share sale contract further provided that:

> **45. Assignment.** Neither this Contract nor any right created by this Contract shall be assignable by Seller (or its successors in interest) or Purchaser without the prior written consent of the other, except for an assignment incident to a merger, consolidation, or reorganization of either party. Nothing in this Contract, expressed or implied, is intended to confer on any person, other than the parties and their successors, any rights or remedies under or by reason of this Contract.

On the same date that the share sale contract was executed, one of the shareholders, Plaintiff Pete Dunn, entered an Employment and Non-compete Agreement with DGB Diversified Services Inc. In relevant part this agreement provides:

> **8. Noncompetition During Employment and After.** For the consideration identified in Paragraph 2, and that consideration received by Employee under the Share Sale Agreements, and as a condition of employment by Employer, and assuming the Employer has not committed a material and continuing breach of the Share Sale Agreement, Employee…further agrees that, for a period of two years commencing on the last date of employment with Employer, he will not, directly or indirectly, own, manage, operate, join, control, or participate in the ownership, management, operation, or control of, or be connected with, in any manner, any business within the States of Mississippi and Arkansas in any county wherein DMH or Bracey does or did business, that shall be in competition with the business of Employer, DMH, or Bracey presently being conducted.
>
> Employee further agrees and covenants not to contact, call on, or solicit any of Employer's customers for whom Employee provided services, on whom Employee called, with whom Employee became personally acquainted, or with whom Employee worked during employment with Employer, nor shall Employee make known to any competitive person or business entity, either directly or indirectly, the names or addresses of any such customers or any information relating in any manner to Employer's trade

> practices and secrets or business relationship with such customers, for a period of two years beyond the date of Employee's employment termination. Notwithstanding any other terms herein, the non-solicitation and non-disclosure covenant contained in this paragraph shall apply throughout the continental United States, and shall not be limited to any other geographic territory or radius defined elsewhere in this agreement.

As pertains to successors or assigns, this agreement further provides:

> **13. Entire Agreement.** This Employment Agreement constitutes the entire understanding between Employee and Employer relating to employment with Employer. This Employment Agreement shall be binding on and shall inure to the benefit of the parties to it and their respective heirs, executors, administrators, legal representatives, successors, and assigns, and shall inure to the benefit of the affiliates of Employer and their respective successors and assigns.

And it states:

> **50. Integrated Contract.** This Contract constitutes the entire agreement between the parties, and there are no agreements, understandings, restrictions, warranties, or representations between the parties other than those set forth or provided for in this Contract.

Apparently, several years after the share sale contract in 2011 was executed and the transaction consummated, DMH, Inc. continued to exist as a separate corporate entity wholly owned by DGB Diversified Services Inc., but in 2014 it was merged into CGB Diversified Services, Inc., with CGB Diversified Services, Inc. as the surviving entity. And, later still, in 2020, CGB Enterprise Inc., the owner of all the shares of CGB Diversified Services, Inc., sold all of the shares of it to Endurance US Holding Corp., whose own stock was owned by Sompo International Holdings. At this point the trail becomes a bit murky. According to the defendant, "to this day, CGB Diversified remains a viable corporate entity…[although] CGB Diversified Services, Inc. and another Endurance prior acquisition (ARMtech Insurance Services, Inc.) now do business collectively as AgriSompo North America, Inc., the named Defendant in this action." It is not clear to the undersigned what exactly this final step entailed (a name change, a purchase by the defendant of the shares of CGB Diversified Services' parent, Endurance U.S.

Holding Corp., or what) but apparently Plaintiffs became, at some point, employees of AgriSompo North America, Inc., until they were terminated by that company. It also appears that upon their termination, AgriSompo North America Inc. sent letters to various crop insurance clients or potential clients asserting that Pete Dunn was, in so many words, prohibited by the employment and non-compete contract he entered on 5/26/2011 with CGB Diversified Services, Inc., in connection with the share sale agreement, from competing with AgriSompo North America Inc. for a two-year period following his termination from their employment.

Dunn asserts in this lawsuit that he is entitled to a declaration that he is not bound by the subject non-compete contract as contended by AgriSompo North America Inc., and that the assertion to the contrary amounts to a tortious interference with his business.[2] In a nutshell, the complaint, as amended, asserts Dunn concedes he entered the share sale contract and the employment/non-compete agreement, the relevant provisions of which are cited above, but he asserts that his obligation not to compete as contemplated and set forth, respectively, therein has no effect. He argues this is because the share sell contract said the obligation of the sellers in that contract not to compete would terminate in the event CGB Diversified Services, Inc. "sold its crop insurance division" and that means, according to Plaintiff Dunn, that the non-compete provision of his employment contract was in effect only if the crop insurance business for which Dunn became employed in 2011 (CGB Diversified Services Inc.) was not sold. *See* [38] at 3.

Stated differently, Plaintiff contends it was the clear understanding and intent of the parties involved in the 2011 transaction that if the entity that employed him and controlled his working activities was sold so that he "was controlled and managed by people under policies he

---

[2] In addition, though not of relevance to the issue herein addressed, Dunn as well as the other named plaintiffs, make claims against Defendant for certain disputed salary/commissions and benefits.

was not familiar with and did not trust", the 2-year post-employment non-compete was of no effect.

## The Discovery Dispute

Plaintiffs seek to depose a designated representative of AgriSompo on, among others, the following disputed topics:

1. Persons most knowledgeable with regard to any analyses by the Defendant as to the effect that the 2020 acquisition of CGB Diversified Services, Inc. d/b/a Diversified Crop Insurance Services ("CGBDSI") would have with respect to the contractual rights and duties of agents of the agencies that had previously been acquired by CGBDSI (including the Dunn Marley & Harris agency) at such time as Agrisompo would become the successor/owner of CGBDSI;

2. Persons most knowledgeable with respect to all businesses and activities in which CGB Diversified Services Inc. d/b/a Diversified Crop Insurance Services was involved prior to its acquisition and its ultimate conveyance to Agrisompo in 2021 each [sic] and the rational [sic] for the above-referenced transaction being accomplished through the involvement of one or more holding companies rather that by the direct sale or transfer of Diversified Crop Insurance Services to AgriSompo; and

3. Persons most knowledgeable with regard to the position which Agrisompo intended to take with regard to the post-sale treatment or application of the language contained within paragraph 40 of the May 26, 2011 Contract of Sale between Dunn Marley & Harris and CGBDSI as well as other contracts between CGBDSI and other agentcies [sic] and the factors considered by Defendant in formulating its position on this issue.

[64].

Defendants argue that topics 1 and 2 are not relevant to any matter that is at issue in this case. As for the 3rd topic, Defendant has no objection to it, insofar as it concerns the position which Agrisompo intended to take with regard to the post-sale treatment or application of the language contained within paragraph 40 of the May 26, 2011, Contract of Sale between DMH, Inc. and CGB Diversified Services Inc. and the factors considered by Defendant in formulating its position on this issue. However, Defendant does object to this topic as relates to other contracts and/or agencies in general.

In response to Defendant's objections to the 30(b)(6) topics, Plaintiff Dunn argues that in the event paragraph 40 of the share sale contract is found not to mean, on the face of the contract, that if ownership of the CGB Diversified Services Inc changes, his non-compete is terminated, then it is ambiguous and these referenced topics are relevant to what the intent of the contracting parties in 2011 was as concerns paragraph 40.

I disagree that the disputed topics, as drafted, are relevant on the issue of the intent of the parties to paragraph 40 of the 2011 share sale contract. As for topic 1, the 2020 transaction (a sale by CGB Enterprise Inc. of the shares of CGB Diversified Services Inc. to Endurance US Holding Corp.) did not, according to the defendant, involve it. Nor can the court discern what non-party agencies or agents that may have been acquired at some time by CGB Diversified Inc. (other than DMH Inc. and its agents) have to do with any issue relevant to this case.

In short, I find only a modified topic 1 is permissible at this stage as follows: *If* the defendant did perform, in connection with the 2011, 2020, or 2021 transactions, any analysis of the effect, if any, of the post-employment non-compete nullification language in paragraph 40 of the share sale agreement, then produce a knowledgeable person to testify about the same.

As for Topic 2, I find that to the extent it seeks information from this Defendant regarding "all businesses and activities in which CGB Diversified Services Inc. d/b/a Diversified Crop Insurance Services was involved prior to its acquisition and its ultimate conveyance to Agrisompo in 2021…" that information is so overly broad as to be irrelevant. And, to the extent it seeks information concerning the "rational [sic] for the above referenced transaction [though it is unclear exactly which transaction is referenced here] to have involved one or more holding companies rather than by the direct sale or transfer of Diversified Crop Insurance Services to AgriSompo" I find it to be not only unclear, but to seek irrelevant information as well. I find only

a modified topic 2 is permissible as follows: produce a 30(b)(6) designee, if there is any, with knowledge of whether CGB Diversified Services Inc. has since 1/1/2011 had/operated a crop insurance division.

As for the disputed portion of Topic 3, I find, again, that contracts CGB Diversified Services Inc. may have had with agencies other than DMH Inc. have no apparent relevance to the issues in this case.

The issues in this case (aside from alleged unpaid commissions and benefits) would appear to be: does the nullification of the post-employment non-compete provision described in paragraph 40 of the share sale agreement set forth a term of Dunn's employment relationship with Diversified Crop Insurance Services Inc.? If so, is the meaning of the nullification of the post-employment non-compete provision in that paragraph ambiguous? If not, was there a sale of CGB Diversified Services Inc.'s Crop insurance division and when? If it is ambiguous, what was the intent of the parties to that provision of the contract when they entered it in 2011? Has that intended event occurred so as to nullify the post-employment non-compete provision? If it has not occurred, did the defendant have the contractual right to enforce the non-compete?

Certainly, the parties and court need to understand the basic legal structure and relationship of the parties, if any, to the 2011, 2020 and 2021 transactions and to one another so that, assuming paragraph 40 of the 2011 share sale agreement is determined to be applicable to Dunn's employment with CGB Diversified Services Inc., a determination of the remaining issues can be made. However, as drafted, topics 1 and 2 and the disputed portion of topic 3 would appear to go afield of seeking that information.

For the foregoing reasons, the court resolves the discovery objections in the manner described above.

**SO ORDERED**, this the 17th day of April, 2023.

                                                       **/s/ Jane M. Virden**
                                                       **UNITED STATES MAGISTRATE JUDGE**